[No. A068597. First Dist., Div. Two. Dec. 11, 1995.]

Guardianship of STEPHEN G., a Minor.
GAYLE K. et al., Petitioners and Appellants, v.
JULIE B., Objector and Respondent.

COUNSEL

Gonsalves & Kozachenko, Linda M. Gonsalves and Sheri Passer Dietrich for Petitioners and Appellants.

Lynda F. Levine for Objector and Respondent.

OPINION

HAERLE, J.—

## I.  INTRODUCTION

Gayle K. and Sandra K. appeal from an order denying their petition to be appointed as guardians of Stephen G., a minor. They contend that the trial court applied an erroneous standard of proof when it required them to show by clear and convincing evidence that Stephen would suffer detriment if returned to his mother, objector Julie B., and that an award of custody to appellants was in Stephen's best interests. We adhere to the great weight of authority and hold that clear and convincing evidence is the proper standard by which to test a nonparent's attempt to gain custody of a child over a parent's objections. In doing so we decline to follow the Fourth District's decision in *Guardianship of Diana B.* (1994) 30 Cal.App.4th 1766 [36 Cal.Rptr.2d 447] (hereafter *Diana B.*).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Julie B. is the natural mother of Stephen, who was born on February 24, 1986, in Santa Barbara. Gayle K. is Julie's mother and Stephen's grandmother. Sandra K. is Gayle's domestic partner.

It is undisputed that, when Stephen was six months old, Julie turned him over to Gayle and Sandra for caretaking. He thereafter lived in their Union City home from August 1986 until at least 1993, during which period they were his primary caregivers. In September 1993 Julie removed Stephen from his school and took him to the Santa Barbara home she shared with her husband Richard B. and their three sons. Five days later, appellants filed a petition for guardianship and temporary guardianship. The court appointed them temporary guardians and authorized them to return Stephen to their residence in Union City. In February 1994, the parties stipulated to extend the temporary guardianship until the petition for guardianship was heard, and to participate in an evaluation by the "Child Custody Training Project."

At the hearing on the guardianship petition appellants called psychologist Michael Jones, who testified that Stephen had developed a "psychological parent-child bond" with Sandra K., and that it would be detrimental to remove him from her. He testified that, if Stephen were placed with his mother and her husband and sons, there was a substantial risk that Stephen would never form a primary bond with her; that he would not identify with the family's values, prohibitions, and ideals; that he would feel resentment towards them; and that he would continue a family pattern by having difficulty with parent-child relationships in his own future life. However, psychologist Heather Levy, a trainee with the Child Custody Training Project, testified that she believed the relationship between Stephen and Sandra was organized around Sandra's emotional needs rather than Stephen's; that Sandra had difficulty letting Stephen out of her sight; that he was suffering developmentally because he was not allowed to be more independent; that his three half brothers wanted Stephen to come and live with them; that Stephen's relationship with Richard B. was beneficial for Stephen; and that she expected Julie and Richard to be supportive of frequent and continuing contact between Stephen and appellants. She concluded that it would not be detrimental for Stephen to be returned to Julie; that it would not be in his best interest to remain in Sandra and Gayle's home; that it would be damaging for Stephen to continue to believe that his mother had no interest in him; that respondent's home offered a more well-rounded environment for a child; and that Stephen could, in that environment, become a more confident and independent child.

In the course of the hearing on the petition the court stated that the central factor in the case was the presumption in favor of granting custody to Julie as Stephen's natural mother. Under this rule, the court said, "there has to be shown by clear and convincing evidence that somebody other than the natural mother should be entitled to be the guardian of the child." After the parties rested the court invited them to supply authority concerning the

"degree or level of detriment" necessary to warrant an award of custody to a nonparent. Counsel for respondent cited *Nancy S.* v. *Michele G.* (1991) 228 Cal.App.3d 831 [279 Cal.Rptr. 212] for the proposition that "custody can be awarded to a de facto parent only if it is established by clear and convincing evidence that parental custody is detrimental." Ultimately the court issued a written opinion stating in part, "[B]efore this Court may grant custody to the K[']s, the Court must find by clear and convincing evidence that such grant of custody is *required* to serve the best interest of Stephen and that to grant custody to Julie B[.] would be detrimental to Stephen." The court found that neither detriment nor best interest was established by clear and convincing evidence. Accordingly, the court denied the petition for guardianship.

Appellants filed this timely appeal.[1]

### III.  DISCUSSION

### A.  *Failure to Raise Point Below*

Appellants' sole contention on appeal is that the trial court applied an unduly rigorous standard of proof when it required "clear and convincing evidence" that Stephen would suffer detriment if placed in Julie B.'s custody and that an award of custody to appellants would be in Stephen's best interest. As indicated above, the court and counsel for respondent stated on more than one occasion that the governing standard of proof was "clear and convincing evidence." Appellants never objected to these statements or urged the court to apply a different standard.

■   "An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not, presented to the lower court by some appropriate method. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.) In apparent recognition of this obstacle, appellants note that their argument on appeal rests on *Diana B.*, *supra*, 30 Cal.App.4th 1766, which was decided after the court below issued its order denying the guardianship petition. Appellants contend that since they did not have an opportunity to cite that case to the trial court, they should be permitted to raise the point for the first time on appeal.

Courts have often entertained new arguments on appeal when they rest on new authority that the appellant could not fairly be expected to anticipate. (See, e.g., *People* v. *Turner* (1990) 50 Cal.3d 668, 703 [268 Cal.Rptr. 706,

---

[1]The order refusing to appoint appellants as guardians is appealable. (Prob. Code, § 2750, subd. (a).)

789 P.2d 887] [point not waived "when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change"]; *Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1, 20 [87 Cal.Rptr. 108] [barring point on appeal would have "unfairly penalize[d]" appellant for a "lack of extrasensory perception"]; *In re Gladys R.* (1970) 1 Cal.3d 855, 861 [83 Cal.Rptr. 671, 464 P.2d 127]; cf. *In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344-1345 [13 Cal.Rptr.2d 215], review den. [*Gladys R.* depended on unfairness of requiring objection contrary to prevailing law]; *In re James D.* (1981) 116 Cal.App.3d 810, 816 [172 Cal.Rptr. 321], hg. den. [same].)

We conclude that the point here was *not* waived because, as appears in the following analysis, *Diana B.*'s approval of a preponderance-of-evidence standard for an award of custody to a nonparent marks an unforeseeable departure from prior law. Therefore, counsel could not be expected to object to the trial court's use of a higher standard of proof in compliance with prevailing authority. However, we are ultimately compelled to conclude that appellants' contention, while not waived, is unsound; that *Diana B.*'s departure from prevailing law was not only unheralded but unwarranted; and that the court below correctly required proof by clear and convincing evidence.

B. *Standard of Proof*

Family Code section 3041 provides that, before a court may award custody of a child to a person other than a parent, "the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child."

The statute is silent with respect to the governing standard of proof. Evidence Code section 115 provides in part, "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." As used in this statute, however, "law" includes decisional law. (Evid. Code, § 160; *People* v. *Burnick* (1975) 14 Cal.3d 306, 313-314 [121 Cal.Rptr. 488, 535 P.2d 352].) "[T]he choice of standard of proof 'is the kind of question which has traditionally been left to the judiciary to resolve.'" (*Woodby* v. *Immigration Service* (1966) 385 U.S. 276, 284 [17 L.Ed.2d 362, 368, 87 S.Ct. 483], quoted in *People* v. *Burnick, supra,* 14 Cal.3d at p. 314.)

Family Code section 3041 is a recodification "without substantive change" of former Civil Code section 4600, subd. (c) (hereafter section 4600(c)). (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) § 3041, p. 236; 23 Cal. Law Revision Com. Rep. (1993) p. 1.)

Section 4600(c) was consistently interpreted to require proof by clear and convincing evidence. In *In re B. G.* (1974) 11 Cal.3d 679, 695, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244] (hereafter *B. G.*), the Supreme Court reviewed the legislative history of section 4600(c) and concluded that it "permit[ted] the juvenile court to award custody to a nonparent against the claim of a parent only upon a *clear showing* that such award is essential to avert harm to the child." (Italics added.) Although the court did not use the precise phrase "clear and convincing evidence," the case was so understood in a number of later cases. (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 421 [188 Cal.Rptr. 781] [hereafter *Phillip B.*]; *In re Robert P.* (1976) 61 Cal.App.3d 310, 317, 320 [132 Cal.Rptr. 5]; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1114 [200 Cal.Rptr. 789]; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 535, 536 [184 Cal.Rptr. 778]; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [156 Cal.Rptr. 262]; *In re W. O.* (1979) 88 Cal.App.3d 906, 909, 911 [152 Cal.Rptr. 130]; *In re Christopher B.* (1978) 82 Cal.App.3d 608, 617 [147 Cal.Rptr. 390]; *In re Cynthia K.* (1977) 75 Cal.App.3d 81, 84-86 [141 Cal.Rptr. 875]; *In re Terry D.* (1978) 83 Cal.App.3d 890, 898-899 [148 Cal.Rptr. 221]; *In re George G.* (1977) 68 Cal.App.3d 146, 165, fn. 14 [137 Cal.Rptr. 201]; see *Nancy S. v. Michele G.*, *supra*, 228 Cal.App.3d at p. 837 [grant of parental rights to "de facto parent" requires clear and convincing evidence].)

As against this impressive array of authority, *Diana B.* appears to stand alone in holding a preponderance of the evidence sufficient to support an award of custody to a nonparent. It mentions only two of the cases just cited, stating that *B. G.*, "did not specify the standard of proof to be applied on remand" and that relevant language in *Phillip B.* "was not strictly necessary to the decision." (*Diana B.*, *supra*, 30 Cal.App.4th at p. 1775.) However, nearly all of the cases cited above cite *B. G.* as establishing the governing standard of proof under Civil Code section 4600. Among these is *Phillip B.*, *supra*, 139 Cal.App.3d at page 421, which this court has cited approvingly on the question of standard of proof. (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1520, fn. 7 [280 Cal.Rptr. 862] [court can grant visitation to nonparent, over parents' objections, only on clear and convincing evidence].) We therefore find ourselves constrained to conclude that the statute was construed long before *Diana B.* to require clear and convincing evidence in all proceedings governed by it.

In addition to stare decisis there are at least two general principles which support this conclusion. First, this interpretation was impliedly approved and adopted by the Legislature when it reenacted section 4600(c) "without substantial change" as Family Code section 3041. (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code, *supra*, § 3041, p. 236; 23 Cal. Law

Revision Com. Rep., *supra*, p. 1.) ■ When the Legislature readopts statutory language which has been judicially construed, it is presumed to have been aware of such constructions and to have acquiesced in them; therefore, reenacted portions of a statute are given the same construction they received before readoption. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *Estate of Wernicke* (1993) 16 Cal.App.4th 1069, 1075-1076 [20 Cal.Rptr.2d 481]; see *Robinson* v. *Fair Employment and Housing Com.* (1992) 2 Cal.4th 226, 235 [5 Cal.Rptr.2d 782, 825 P.2d 767] ["very strong presumption"]; but see *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1107-1108 [17 Cal.Rptr.2d 594, 847 P.2d 560] [legislative silence "gives rise at most to an arguable inference"].)

■ Second, and more importantly, "a statute must be construed, if possible, to avoid constitutional issues." (*People* v. *Brown* (1993) 6 Cal.4th 322, 335 [24 Cal.Rptr.2d 710, 862 P.2d 710]; see *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 466 [253 Cal.Rptr. 236, 763 P.2d 1326]; *Young* v. *Haines* (1986) 41 Cal.3d 883, 898 [226 Cal.Rptr. 547, 718 P.2d 909].) If Family Code section 3041 were construed to permit an indefinite suspension of parental custody on a mere preponderance of the evidence, it would raise grave due process concerns. The leading case on this point is *Santosky* v. *Kramer* (1982) 455 U.S. 745, 747-748 [71 L.Ed.2d 599, 603, 102 S.Ct. 1388] (hereafter *Santosky*), which held that before a state may terminate parental rights, "due process requires that the State support its allegations by at least clear and convincing evidence." The California Supreme Court had reached the same conclusion the previous year, adopting a standard of clear and convincing evidence with respect to the statutory procedure then governing the termination of parental rights. (*In re Angelia P.* (1981) 28 Cal.3d 908, 917-919 [171 Cal.Rptr. 637, 623 P.2d 198] [hereafter *Angelia P.*].)

The *Diana B.* court distinguished *Santosky* primarily on the ground that "[i]n the guardianship context the consequence of error is substantially less dire" than the consequences which flow from a proceeding to terminate parental rights. (*Diana B.*, *supra*, 30 Cal.App.4th at p. 1776.)[2] "Although the responsibility for making decisions for the minors is transferred to someone

---

[2]The court did not mention the decision in *Angelia P.*, *supra*, 28 Cal.3d 908. Although the reasoning of *Angelia P.* was rendered inapplicable to termination proceedings by the wholesale revision of the governing statutes (see *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 253, 256 [19 Cal.Rptr.2d 698, 851 P.2d 1307] (hereafter *Cynthia D.*), cert. den. (1994) __ U.S. __ [127 L.Ed.2d 567, 114 S.Ct. 1221]), it has not been overruled or otherwise repudiated as it may apply to other situations. The court there found that clear and convincing evidence was required in order to balance the interests of "(1) the parent and child in a continuing familial relationship; (2) the parent in preserving the integrity and privacy of the family unit,

other than the parent, there is no termination of parental rights. Moreover, Probate Code section 1601 provides a mechanism for terminating the guardianship . . . ." (30 Cal.App.4th at p. 1776.) This distinction, however, is more a matter of semantics than of concrete effects.

The analysis in *Santosky* was driven by the parents' "fundamental liberty interest" in the "care, custody, and management of their child." (*Santosky*, *supra*, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606].) Although guardianship does not *extinguish* that interest, it completely *suspends* it for an indefinite period. (Fam. Code, § 7505, subd. (a) ["The authority of a parent ceases on . . . [t]he appointment, by a court, of a guardian of the person of the child."]; Prob. Code, § 2351, subd. (a) [upon appointment, guardian "has the care, custody, and control of, and has charge of the education of, the ward . . . ."].) In the absence of further court intervention, this suspension will continue until the child is no longer subject to parental control. (Prob. Code, § 1600 [guardianship continues until death, adoption, majority, or marriage of the ward]; see Fam. Code, § 7505, subd. (b) [parental authority terminated by child's attaining age of majority]; Fam. Code, § 7505, subd. (c) [same, child's marriage]; see Fam. Code, § 7002 [conditions effecting emancipation].) Therefore the guardianship will persist, and parental rights will remain suspended, for the remainder of the child's minority unless the court acts to terminate it sooner.

The court may terminate a guardianship, on petition, if it finds that ". . . it is no longer necessary that the ward have a guardian or that it is in the ward's best interest to terminate the guardianship." (Prob. Code, § 1601.) This language requires no consideration of the parents' liberty interest, protection of which is therefore dependent on the broad discretion of the trial court.[3] Moreover, once the court has concluded that the child's continuous residence with nonparents would make it detrimental to return custody to a parent, it is difficult to perceive how the parent could ever prove the guardianship was "no longer necessary."

---

free of state intervention and social stigma attached to either parent or child; (3) the child in a permanent, secure, stable, and loving environment; and (4) the state in protecting the child." (*Angelia P.*, *supra*, 28 Cal.3d at p. 919, quoted in *Cynthia D.*, *supra*, 5 Cal.4th at p. 253.)

[3]The burden of proof and scope of discretion under Probate Code section 1601 are presumably the same as under the predecessor statute: "The burden rests upon the moving party to establish that the guardianship is no longer necessary. [Citations.] Whether sufficient cause to remove a guardian exists is a question of fact to be determined in the broad discretion of the trial judge, whose determination will not be disturbed except upon a showing of manifest abuse of discretion. [Citations.]" (*Guardianship of Davis* (1967) 253 Cal.App.2d 754, 761 [61 Cal.Rptr. 297]; see *Guardianship of White* (1948) 84 Cal.App.2d 624, 628 [191 P.2d 466]; *Guardianship of M. S. W.* (1982) 136 Cal.App.3d 708, 711-712 [186 Cal.Rptr. 430].)

As a practical matter, then, many guardianship orders will forever deprive the parent of a parental role with respect to the affected child. Even if this were not so, courts have required proof by clear and convincing evidence where the invasion of parental rights was no more "irrevocable" than in guardianships. Many if not most of the appeals cited above were taken from orders in dependency proceedings placing the child with a nonparent. (*In re Robert P.*, *supra*, 61 Cal.App.3d 310 [initial home-removal order]; *In re Cheryl H.*, *supra*, 153 Cal.App.3d 1098 [dispositional order removing child from home]; *In re Jamie M.*, *supra*, 134 Cal.App.3d 530 [same]; *In re Jeannette S.*, *supra*, 94 Cal.App.3d 52 [same]; *In re W. O.*, *supra*, 88 Cal.App.3d 906 [same].) Under the procedure then in effect, such orders effected a severance of parental rights no more "irrevocable" than the one resulting from an order of guardianship.

Similarly, a home removal order under current dependency procedures is far from irrevocable. The parents are generally entitled to 12 to 18 months of reunification services (Welf. & Inst. Code, § 361.5) as well as regular status review hearings at which the court must consider the continuing necessity for the placement and the progress toward reunification (Welf. & Inst. Code, §§ 366.21, 366.22; see *id.*, § 366). Despite all this solicitude for parental interests, a home-removal order still must be supported by clear and convincing evidence. (Welf. & Inst. Code, § 361, subd. (b).) In contrast, there is no provision for periodic review of guardianships or for providing services directed at reunifying the child with the parent whose rights have been suspended indefinitely.

For these reasons we must reject the implication of *Diana B.* that a lower standard of proof is justified in guardianship proceedings by *Cynthia D.*, *supra*, 5 Cal.4th 242. In that case the appellant argued that Welfare and Institutions Code section 366.26, adopted in 1987 as part of a "comprehensive revision of laws affecting children," violated due process by permitting the termination of parental rights based on a finding by a mere preponderance of the evidence that a return of the child to the parent would be detrimental to the child. (5 Cal.4th at pp. 247, 250.)[4] The court held that the statute passed constitutional muster, despite *Santosky* and *Angelia P.*, because the revised procedure for terminating parental rights included ample safeguards against an erroneous or improper abrogation of the parents'

---

[4]The issue in *Cynthia D.* was conceptually distinct from the one presented here and in *Diana B.* The court was not called upon to construe a statute, but to decide whether plain statutory language comported with due process. Here the question may be characterized as one of statutory construction: what standard of fault applies to the findings mandated by Family Code section 3041, which is silent on that subject? The constitutional issue is obviated by reading the statute, as it consistently has been read, to require clear and convincing evidence.

constitutionally protected interests. In comparing this procedure to the New York regime invalidated in *Santosky*, the court repeatedly cited the elaborate series of hearings, findings, and services to which the parents were entitled before any termination order could issue under Welfare and Institutions Code section 366.26.[5] The court also distinguished the New York statute as employing " 'imprecise substantive standards that leave determinations unusually open to the subjective values of the judge,' thus allowing 'unusual discretion to underweigh probative facts that might favor the parent.' " (5 Cal.4th at p. 254, quoting *Santosky*, *supra*, 455 U.S. at p. 762 [71 L.Ed.2d at p. 612].) The California statute did not invite such "value judgments." (5 Cal.4th at p. 254.) The court concluded that California's dependency statutes "endeavor to preserve the parent-child relationship and to reduce the risk of erroneous fact-finding in so many different ways that it would be fanciful to think that these state interests require what in most cases would be a sixth inquiry into whether the severance of parental ties would be detrimental to the child." (*Id.* at pp. 255-256.)

In short, *Cynthia D.* rests on the proposition that the pretermination proceedings, rigorously protective of the parent's presumptive rights, compensate for the shift of judicial solicitude away from the parent in favor of an

---

[5]"By the time dependency proceedings have reached the stage of a section 366.26 hearing, there have been multiple specific findings of parental unfitness. Except for a temporary period, the grounds for initial removal of the child from parental custody have been established under a clear and convincing standard [citation]; in addition, there have been a series of hearings involving ongoing reunification efforts and, at each hearing, there was a statutory presumption that the child should be returned to the custody of the parent. [Citations.] Only if, over this entire period of time, the state continually has established that a return of custody to the parent would be detrimental to the child is the section 366.26 stage even reached." (*Cynthia D.*, *supra*, 5 Cal.4th at p. 253.)

"The number of previous findings of 'fault,' coupled with the seriousness of the resulting danger to the minor, most clearly differentiate the section 366.26 hearing from the termination hearing in *Santosky* v. *Kramer*. A parent whose conduct has already and on numerous occasions been found to grievously endanger his or her child is no longer in the same position as a parent whose neglect or abuse has not so clearly been established. At this point the interests of the parent and child have diverged, and the child's interest must be given more weight." (*Cynthia D.*, *supra*, 5 Cal.4th. at p. 254.)

"By the time termination is possible under our dependency statutes the danger to the child from parental unfitness is so well established that there is no longer 'reason to believe that positive, nurturing parent-child relationships exist' (*Santosky* v. *Kramer*, *supra*, 455 U.S. at p. 766 [71 L.Ed.2d at pp. 614-615]), and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished. At this point . . . it has become clear 'that the natural parent cannot or will not provide a normal home of the child' (455 U.S. at p. 767 [71 L.Ed.2d at pp. 615-616]), and the state's interest in finding the child a permanent alternate home is fully realized. In light of the earlier judicial determinations that reunification cannot be effectuated, it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home. By the time of the section 366.26 hearing, no state interest requires further evidence of the consequences to the child of parental unfitness, let alone evidence that meets an elevated standard of proof." (*Cynthia D.*, *supra*, 5 Cal.4th at p. 256.)

exclusive focus on the best interests of the child. But this impressive array of safeguards and services has no parallel in guardianship proceedings. In the latter, there is no prior "finding[] of parental unfitness," let alone "multiple" findings.[6] The only mandatory adjudication is the ruling on the petition itself.[7] In contrast to past and present dependency procedures, the Probate Code requires no detailed control over the conduct of a guardianship. The statutes merely provide that the court may insert conditions in the order of appointment with the guardian's consent. (Prob. Code, § 2358.) Nor is there any prescribed schedule of ongoing judicial supervision—only the provision that, on petition of an "interested person," the court may "instruct the guardian." (Prob. Code, § 2359, subd. (a).) Accordingly, the parent has only such rights with respect to the child as the court may allow in its more-or-less unfettered discretion, as perhaps eventually bounded by guidelines yet to be enunciated by appellate courts.

Indeed, at no stage of the proceedings do the guardianship laws contain anything resembling the highly specific *substantive* standards which govern dependency proceedings. Apart from the requirements of Family Code section 3041, the only precondition for granting a guardianship petition is that it "appears necessary and convenient." (Prob. Code, § 1514, subd. (a).) These substantive standards more closely resemble the ambiguous requirements of the statutes held insufficiently protective in *Santosky* than the precise, detailed preconditions upheld in *Cynthia D.*

In several other respects the creation of a guardianship under California law offers fewer protections for parental interests than dependency proceedings or proceedings to terminate parental rights.[8] In contrast to dependency and termination proceedings, the laws governing guardianship petitions make no provision for appointing counsel for a parent. (See Prob. Code,

---

[6]Indeed, if a court-appointed investigator learns of an allegation of unfitness, the matter must be referred to the appropriate county agency for investigation and, implicitly, for possible initiation of dependency proceedings. (Prob. Code, § 1513, subd. (c); see Welf. & Inst. Code, §§ 328, 329.)

[7]The would-be guardians may, if they choose, seek an order of *temporary* guardianship, but the only substantive requirement for such an order is a finding of "good cause." (Prob. Code, § 2250, subd. (b); see Prob. Code, § 2257 [duration and extension].) Despite this vague standard, the statutes grant a temporary guardian the presumptive power to control the ward's medical treatment (Prob. Code, § 2252, subd. (b)(1)), plus such additional powers as the court may grant in the order of appointment or "by subsequent order made with or without notice as the court may require" (Prob. Code, § 2252, subd. (c)).

[8]Our discussion of guardianship proceedings excludes proceedings instituted pursuant to a permanent plan adopted with respect to a dependent child under the authority of Welfare and Institutions Code section 366.26, subdivisions (b)(3), (c)(4), and (d).

§ 1470; cf. Welf. & Inst. Code, § 317; Fam. Code, § 7862.)[9] Moreover, dependency and termination proceedings are almost invariably instituted by officers of the state, who may be expected to have made some neutral assessment prior to initiating litigation. A guardianship petition, in contrast, may be filed by any "relative or other person" claiming to act "on behalf of the minor." (Prob. Code, § 1510, subd. (a).) No representative of the state, or other arguably neutral party, participates in the decision to institute proceedings. Nor is there any mandatory equivalent of the numerous investigations and reviews undertaken by child welfare authorities in dependency cases.[10]

Nothing in *Cynthia D.* suggests an intention by the court to alter the rule in *B. G.*, *Angelia P.*, or any of the decisions following them which have required clear and convincing evidence for an award of custody to a nonparent. Rather, *Cynthia D.* stands for the proposition that the Legislature may prescribe alternate means of protecting the parents' fundamental liberty interest in the care, companionship, and control of their children, and that when those means adequately protect that interest, the specific protection otherwise prescribed by *Santosky* may be relaxed. Since guardianship proceedings provide none of the protections afforded by the statutes in *Cynthia D.*, that case does not support a relaxed standard of proof in such proceedings.

We find in the text of *Diana B.* no other sufficient basis for its result. We fail to perceive how the outcome could be supported by the idea that the interests of the mother had been "somewhat compromised" by her willingness to leave her children with the proposed guardians for a long period of time. One party's conduct in a particular case can offer little justification for a rule presumably intended to guide the factfinder in *all* guardianship cases. To make the *standard of proof* dependent on the parent's conduct invites mischievous procedural complexities serving little if any apparent purpose.

We note authority in some other jurisdictions for a rule under which voluntary relinquishment of a child for some period of time may defeat or diminish the parental preference. (Annot., 15 A.L.R.5th 692, 729-737; but

---

[9] Probate Code section 1470 empowers the court to appoint counsel for the *ward* (or proposed ward). It goes on to provide that the court "shall" order the parents to pay the reasonable cost of counsel thus appointed, after notice and hearing on whether such an order would be just.

[10] Probate Code section 1513, subdivision (a), provides in part, *"Unless waived by the court,* a court investigator, probation officer, or domestic relations investigator *may* make an investigation and file with the court a report and recommendation concerning each proposed guardianship of the person or guardianship of the estate." (Italics added.) The parents are assessed at least a portion of the costs for any such study, unless the county "waive[s]" the assessment for hardship. (Prob. Code, § 1513.1, subd. (a).)

see *id.* at pp. 727-729 [relinquishment not a factor], 737-740 [continuity of residence one factor to be considered].) However, to adopt such a rule in California would appear to add an unwritten exception to the unqualified language of Family Code section 3041. Perhaps for that reason, our courts have preferred to treat the prolonged relinquishment of parental duties as evidence supporting findings, under Civil Code section 4600, that a return to parental care would be detrimental to the child, and that remaining in the custody of the erstwhile caregiver was in the child's best interests. (See *In re Volkland* (1977) 74 Cal.App.3d 674, 679-680 [141 Cal.Rptr. 625], hg. den. [mother's leaving child with grandmother for nearly seven years supported clear showing that award to parent would be detrimental and award to nonparent was required to serve child's best interest]; *Chaffin* v. *Frye* (1975) 45 Cal.App.3d 39, 46 [119 Cal.Rptr. 22] [girls' continuous residence for "almost their entire lives" with grandparents was among "potent factors" supporting award of custody to grandparents]; cf. *Guardianship of Barassi* (1968) 265 Cal.App.2d 282, 288-290 [71 Cal.Rptr. 249] [discussing doctrine of parental "abandonment" under pre-Civil Code section 4600 law].) Under these cases, the real relevance of a parent's leaving the children with others is that it could be accepted by a fact finder as evidence supporting an inference that returning the children to parental custody would be detrimental to them and against their best interest. That, of course, is precisely the determination for which we seek to ascertain the governing standard of proof.

Similarly, we are unable to discern how the applicable standard of proof can be significantly affected by a grant of visitation rights to the parent. (Cf. *Diana B., supra*, 30 Cal.App.4th at p. 1776.) While an order permitting visitation is obviously "less dire" than one denying contact with the child, the right to visit is no substitute for the fundamental liberty interest underlying the rule in *Santosky* and *B. G.* In any event, the guardianship statutes guarantee no visitation rights; indeed, they contain no express provision for granting such rights nor provide any definite standards by which they may be granted or denied.

We also find ourselves unable to accept the proposition that a higher standard of proof is unnecessary because even under a lower standard the court would have to find sufficient evidence to overcome the presumption in favor of parental custody. (*Diana B., supra*, 30 Cal.App.4th at p. 1777.) With respect, we believe the statement of this point in *Diana B.* appears patently circular: "There is no compelling reason that such a finding [of detriment] must be supported by more than a preponderance of the evidence because *the finding itself requires an affirmative finding* of detriment; in the absence of such a finding custody remains with the parent." (*Id.* at p. 1777.) This statement defies meaningful analysis.

For all these reasons we decline to follow *Diana B*. Instead we adhere to prior authority and hold that a trial court may not grant a petition for guardianship, over the objection of a natural parent, in the absence of clear and convincing evidence that an award of custody to the parent would be detrimental to the child, and that an award to the prospective guardian is in the child's best interest. Since the court below properly understood and applied this standard, the order under review is affirmed.

Kline, P. J., and Phelan, J., concurred.