[No. B170542. Second Dist., Div. Seven. Apr. 27, 2004.]

TRACY A., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PAULINE I. et al., Real Parties in Interest.

**COUNSEL**

Legal Aid Foundation of Los Angeles and Jane S. Preece for Petitioner.

Crandall, Wade & Lowe and Sarah L. Overton for Respondent.

No appearance for Real Parties in Interest.

**OPINION**

**JOHNSON, Acting P. J.**—Petitioner Tracy A. (mother) is involved in a guardianship proceeding concerning her daughter, which was initiated by

mother's parents (real parties in interest). Mother contends respondent superior court violated her right to due process when it refused to provide her attorney with a copy of an investigation report and recommendation concerning the proposed guardianship, which was prepared by a court investigator pursuant to Probate Code section 1513. Mother asks this court to issue a peremptory writ of mandate directing the superior court to give her or her attorney a copy of the investigation report and recommendation and any other report the superior court has or will consider in ruling on the guardianship proceeding. We issue the writ based on our conclusion the current probate court policy denying parties or their counsel copies of these reports rests on an erroneous interpretation of Probate Code section 1513, subdivision (d).

## FACTS AND PROCEEDINGS BELOW

In July 2003, mother's parents filed a petition to be appointed the temporary guardians of mother's daughter. At an ex parte hearing a few days later, the superior court granted the petition and issued letters of temporary guardianship. Mother's parents also filed a petition to be appointed the (permanent) guardians of mother's daughter. The trial court set a hearing on this petition for September 22, 2003. Mother received notice of the latter petition and the September 22 hearing date.

On September 19, mother went to the superior court and visited what she believed was the probate investigator's office. She filed an opposition to the guardianship petition. She also asked a woman in the office if she could "read the probate report." Mother was referring to the investigation report and recommendation concerning the proposed guardianship, which a court investigator prepared pursuant to Probate Code section 1513.[1] Mother claims the woman denied her request to see the report, stating she did not know where the report was located.

The morning of the September 22 hearing, mother's counsel asked an unidentified person at the superior court if she could see the probate report. This person told counsel the report was "unavailable." A few minutes later, the report "was made available" to counsel, but "the court clerk" said mother was not "allow[ed] . . . to read the report." Mother's counsel sat together with the attorney representing mother's parents and "quickly read" the six-page investigation report and recommendation "minutes" before the hearing commenced.

During the hearing, the superior court informed mother's counsel it had not considered mother's objections to the guardianship petition because mother

---

[1] All further statutory references are to the Probate Code unless otherwise noted.

had filed her opposition too late. The court continued the hearing to early November and ordered a report to be prepared by the Department of Children and Family Services (DCFS).[2] The court ordered the temporary guardianship to remain in place until the next hearing. The parties worked out a visitation schedule for mother and her daughter.

Before the conclusion of the hearing, mother's counsel requested a copy of the probate report. The superior court responded as follows: "Well, we don't permit copies. However, counsel may review it and take whatever notes you wish to take, but because of policy and the existence very often in probate, investigative reports of statements made [sic], the official report itself should not be copied. But you may certainly have as much time as you need to review it here in court. And you if you [sic] want to write notes, fine. If you want to write it out longhand, you know, it's fine to help you. But we don't release the report."

The court also informed counsel it would not provide her with a copy of the DCFS report. The court explained: "[T]he [DCFS] report will be made available to you that morning when you come to court. If you need more time, you can always hold the matter. You can review the report, and I'll hold it till [sic] the end of the calendar if you need more time than that. [¶] . . . [¶] But counsel will not have to address any issue before the court without first seeing the report on that date, is all I can promise you. If you don't see it [the DCFS report], it means I haven't seen it either, because it hasn't been provided." The court also explained, at the next hearing, the parties would have the choice of either arguing their case based on the reports and other information submitted to the court, or requesting the matter be set for an evidentiary hearing.

On October 2, 2003, mother's counsel went to the probate department where the guardianship matter was being heard and asked to see a copy of the probate report. The clerk gave it to her, but said she "could not take [the report] outside the department." Mother's counsel "sat in the department for approximately one and one-half hours and wrote down the whole report." She asked her secretary to type it up. Counsel showed the report to mother. Mother pointed to portions of the report she claimed were incorrect.

---

[2] Under section 1513, subdivision (c), "If the [probate court] investigation finds that any party to the proposed guardianship alleges the minor's parent is unfit, as defined by Section 300 of the Welfare and Institutions Code, the case shall be referred to the county agency designated to investigate potential dependencies. Guardianship proceedings shall not be completed until the investigation required by Sections 328 and 329 of the Welfare and Institutions Code is completed and a report is provided to the court in which the guardianship proceeding is pending."

On November 3, 2003, the superior court held another hearing in the guardianship matter. That morning, mother's counsel reviewed the DCFS report for the first time. The court continued the hearing to November 6. DCFS submitted another report to the court along with the results of 10 drug tests. At the November 6 hearing, mother's counsel asked a DCFS case worker if she could have a copy of the report DCFS had submitted that day. The case worker declined to give counsel a copy of the report. According to mother's counsel, the case worker said she would have given counsel a copy of the report if the matter were being heard in dependency court, but the rules in probate court were "different" than those in dependency court.

Mother's counsel informed this court, at the November 6 hearing, the superior court terminated the temporary guardianship, ordered mother's daughter be placed with mother, and set a trial on the guardianship petition for December 22, 2003. As of November 20, mother's counsel had "not yet had time" to go to court and copy down longhand the two DCFS reports along with the results of the 10 drug tests. The December 22 trial was put over to January 7, 2004. On that date, after an in-chambers conference the parties signed a stipulation settling certain of the issues. After the stipulation was filed, the court took the matter off calendar and reset a hearing on the petition, if necessary, for January 10, 2005.

## DISCUSSION

### I. *THE CASE IS NOT MOOT.*

In a letter to this court filed on the eve of argument, respondent argued the case was moot and requested we dismiss the petition. The letter recited the then recent developments in the trial court mentioned above. Respondent pointed out the court had decided to cancel the hearing for which the confidential reports at issue had been prepared and allow the daughter to remain with her mother. Because petitioner's access to these specific reports may no longer be needed or even relevant, respondent urges, this petition and its disposition are moot.

We disagree. In the view of this court, the case is not moot for two independent and sufficient reasons.

First, it is more than possible there will be future hearings in this very case at which similar confidential reports will be prepared and filed with the trial court. Indeed the trial court scheduled such a hearing, if needed, for January 10, 2005. In addition, there is an ongoing possibility the department or some other agency or individual will initiate a new action claiming mother is no longer an appropriate custodian for her daughter. Accordingly, it is not

unlikely the issue of petitioner's access to future confidential reports covered by this same code provision will re-emerge in this same litigation involving these same parties. To require petitioner to initiate a new writ proceeding at that time and for this court to delay consideration of the issue until then would be wasteful of judicial resources—even if this court had not already researched and drafted an opinion and heard oral argument, as it has.

Second, this is one of those issues we sometimes encounter where there is a continuing public interest in its resolution yet it is unlikely the issue can be resolved before it becomes moot. This is a widely accepted exception to the general rule courts should not decide moot cases. "[T]he profusion of cases in which moot appeals have been decided in the public interest, makes it clear that mootness is not really a bar to production of a much needed advisory opinion in writ proceedings . . . ."[3]

This writ proceeding presents an unusually strong case for application of the public interest exception. Unless we consider and decide the issue hundreds if not thousands of future litigants in the same position as petitioner will continue to be denied copies of confidential reports important to the proceedings without knowing whether that denial is legal or constitutional. Yet in most instances the hearing at which the petitioner needs the report will have taken place before an appellate court can consider and issue a writ. Likewise, if we accept respondent's invitation to find this case to be moot the probate court will be deprived of an appellate ruling on the issue of whether its current practices are legitimate. If so, a significant number of its current and future decisions might be overturned on appeal for procedural or constitutional error.

For either and both of the above reasons, we proceed to consider and decide this writ despite the fact access to the specific confidential reports in question is no longer an active issue.

II. *THE CURRENT PROBATE COURT PRACTICE OF DENYING PARTIES SUCH AS THE NATURAL PARENTS COPIES OF CONFIDENTIAL REPORTS OR THE OPPORTUNITY TO MAKE PHOTOCOPIES OF SUCH REPORTS IS INCONSISTENT WITH THE TERMS OF PROBATE CODE SECTION 1513, SUBDIVISION (d).*

The parties focus their arguments on the issue whether the probate court's interpretation of section 1513, subdivision (d) (section 1513(d)) comports with constitutional due process. For reasons explained below, we find it unnecessary to reach the constitutional issue because we conclude the practice in question is not compatible with a proper interpretation of the statute.

---

[3] 9 Witkin, California Procedure (4th ed. 1997) Appeal, section 652, and cases cited therein.

We begin with the language of Probate Code section 1513(d): "The report authorized by this section is *confidential* and shall only be *made available to persons who have been served in the proceedings* or their attorneys. The clerk of the court shall make provisions for the *limitation of the report* exclusively to persons entitled to *its receipt.*" (Italics added.)

Respondent offers three grounds for interpreting the above section to authorize the probate court's practice of denying copies of DSS reports to parents or their counsel. First, respondent contrasts the language of this section with the provisions in analogous dependency and family court proceedings which direct a copy of the report be served on the parent or parents ten days before the hearing. Secondly, respondent urges these reports contain confidential information, particularly about the prospective guardian, thus warranting these uniquely restrictive practices. Thirdly and most strongly, respondent argues the term "receipt" in the clause "persons entitled to its receipt" means only receipt of the information in the report and not the report itself. We have problems with all three of these justifications.

It is a far reach to imply from the provisions in the dependency and family court sections of the code requiring those responsible for preparing reports of this nature to "provide" or "serve" copies of same in those proceedings[4] that the Legislature intended to deny any release of copies of such reports in guardianship proceedings. If the issue in this case were to the effect the probate court failed to *serve* a copy of the report on petitioner or petitioner's counsel—or refused to comply with a request for such a copy until say five days—instead of ten days—before the hearing, respondent might have a point. It is fair to say the precise provisions of the dependency or family court processes do not apply to guardianship proceedings in probate court. But this does not mean the Legislature intended or that the language of 1513(d) permits the probate court to deny requests from parents or their counsel for copies of these reports.

Nor do we find persuasive the contention these reports contain information so much more sensitive than that found in reports used in dependency court and family court as to require the far more restrictive measures the probate court has instituted. The reports prepared for dependency court proceedings, for instance, also present detailed and very personal information about natural parents, foster parents, potential and present guardians or adoptive parents,

---

[4] See, e.g., Welfare & Institutions Code section 366.21(c) instructing social workers who prepare certain reports in dependency cases to furnish copies to the parent or legal guardian and legal counsel for child. See also Family Code section 3111 requiring child custody evaluations to be served on the parties and their attorneys in contested child custody proceedings.

and the like. The code likewise designates most of the reports in these other proceedings to be confidential, and as such not available to the press or general public.[5] So there is nothing uniquely confidential about the reports in guardianship proceedings that would justify the uniquely restrictive policies the probate court has instituted, unless the Legislature specifically authorized a special level of confidentiality for these documents.

This returns us to the language of 1513(d). It is true this provision requires the reports be "confidential." But confidential as to whom? That is, who is it the section seeks to deprive of access to the report? The answer seems obvious: the press and the general public (including lawyers and parties involved only in other proceedings in probate court). But as the terms of the section make clear, it does not seek to keep these reports confidential from "the persons who have been served in the proceedings or their attorneys." Rather it specifically authorizes this defined category of persons to receive the reports. There is no dispute petitioner was "served in the proceeding[]" and thus, along with her attorney, is within the category entitled to the report as opposed to the category from which it is to be withheld.

Respondent argues even this special group is only entitled to receive the "information in the reports" and not the reports themselves. But this interpretation runs contrary to the language the Legislature employed. Having defined the category of persons to whom the report is to be made available, the section then instructs the clerk to "make provisions for the limitation of *the report* exclusively to persons entitled to *its receipt*." As a matter of grammatical construction and of logic, the pronoun "its" necessarily refers back to the noun "report," not just the information in the report. (Indeed the words "information in" appear nowhere in 1513(d) and courts generally avoid adding words to a statute when interpreting its meaning.)[6] Websters Dictionary, in turn, defines a "recipient" as "one that receives" and the term "receives" as "to take possession or delivery of."[7] Consequently, this limited

[5] See, e.g., Family Code section 3111 applicable to investigations in contested child custody cases. It authorizes the court to appoint a "child custody evaluator" and also to order that evaluator to file "a written *confidential* report." (Italics added.) The Legislature obviously did not consider the confidentiality of reports of this nature to be impaired if copies were furnished to the litigants and their lawyers, because it required these reports to be served on "the parties or their attorneys, and any other counsel appointed for the child." The Legislature then provided this confidential report "shall not be made available" to anyone other than those defined in the section. (Fam. Code, § 3111.)

[6] "Legislative enactments must be construed in accordance with the language of the ordinance given its ordinary meaning [citation], and in construing such language the *courts may not insert any omitted provision* (Code of Civ. Proc., § 1858)." (*Gilbert v. City of Los Angeles* (1973) 33 Cal.App.3d 1082, 1087 [109 Cal.Rptr. 622], italics added.)

[7] Webster's Third New International Dictionary (1993) pages 1895, 1894. Similarly, Black's Law Dictionary defines the term "receive" as "to take into possession and control; accept custody of; collect." (Black's Law Dict. (6th ed. 1990) p. 1268.)

class of people is entitled to take possession of the physical report, not merely to borrow it long enough to copy a few passages or the entire report in long hand.

Before the invention of the typewriter and carbon paper it would have been defensible to lend litigants in petitioner's position the one and only original handwritten report and expect them to copy the report itself or salient portions in longhand. But we have gone far beyond that. In the era of photocopiers and scanners, to be a "recipient" of a document one must receive a photocopy or other duplicate original of that document. At a minimum, one must receive the original long enough to make such a copy through current means of electronic reproduction, and not be limited to handwriting a copy of the printed words.

We also find it noteworthy the probate court's current policy is only calculated to achieve its presumed purpose as to some of those entitled to access these reports. That subclass consists of those who cannot afford to pay lawyers to spend hours copying the entire report or reports in longhand—and who lack the time during court hours to do so themselves. The probate court's current policy allows a party or a party's lawyer to copy the entire report by hand, then transcribe it, and make as many photocopies as they want. So a more affluent party or one who has ample free hours during the court day can produce one or many copies of the confidential document. Consequently, if parties or their lawyers are truly a threat to the confidentiality of these documents and their contents the probate court's current policy would be destined to prove ineffectual in many cases, even were it consistent with the statutory language, which we do not consider it to be.

Nor do we consider it possible to justify this disparate treatment of litigants on grounds those who can't afford lawyers or who work during the day or are disabled or illiterate are somehow more likely to breach confidentiality than those in a position to have these reports copied in long hand. Such a justification would be constitutionally suspect as well as empirically dubious.

For the above reasons, we deem the probate court's current policy denying litigants and their lawyers copies of these reports in guardianship proceedings—or even the opportunity to make photocopies of same—to rest on an erroneous interpretation of 1513(d). A statute designed only to keep these reports out of the hands of those who have no legitimate need for them has been turned into a policy which drastically restricts access to those reports for the very group the Legislature designated as the sole legitimate

recipients. Respondents have not offered anything suggesting the Legislature intended such a restrictive and discriminatory policy and the language of the statute certainly fails to support such an interpretation.

We further observe the current practice of only allowing access to these reports on the day of the hearing—even if the report was available and requested by a party before that date—runs afoul of the obvious intent of 1513(d). That section authorizes petitioner and any others served in the proceeding to receive these reports for a reason—so they can decide whether to appear and then to prepare for the hearing if they decide to do so. It defeats this purpose for a court to deny a party access to the report until the party appears for the hearing. Even providing the party a copy of the report at that late date would be of limited assistance. A lawyer and even more so an unrepresented litigant is hard-pressed to make an instantaneous assessment of the report's content and prepare a proper response.

Thus, in order to fulfill the evident policy behind 1513(d) the probate court should modify its practices to allow persons served in a guardianship proceeding to receive a copy of any relevant report and to receive it a sufficient time before any hearing to permit proper preparation for that hearing. It is true, unlike dependency proceedings, the Legislature has not set a specific minimum time before commencement of a guardianship hearing when parents are absolutely entitled to receive a copy of the report. But in setting such a minimum time period in dependency court the Legislature was implementing constitutional due process requirements, principles that would apply even in the absence of this specific statutory standard. "California's dependency system must pass constitutional muster, because it operates, in many cases, to deprive parents and children of their constitutional rights to parent and of their rights to be raised by their families of origin. It has passed such muster because of the significant safeguards built into this state's dependency statutes."[8] Guardianship proceedings, it should be noted, can have similar implications for those same constitutional rights both parents and their children possess.

Due process requirements must be met in this context as well. Despite the fact parental rights are not terminated in a guardianship proceeding, as they can be in dependency, a guardianship suspends the parents' interest "in the 'care, custody and management of their child.' "[9] "As a practical matter, then,

---

[8] *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 545 [126 Cal.Rptr.2d 14] (holding failure to serve report 10 days before hearing requires per se reversal of decision reached at hearing).

[9] *Guardianship of Stephen G.* (1995) 40 Cal.App.4th 1418, 1426 [47 Cal.Rptr.2d 409].

many guardianship orders will forever deprive the parent of a parental role with respect to the affected child."[10]

In recognition of the serious consequences to parental rights, other important due process protections have been imposed in guardianship proceedings. These due process rights are safeguards that, without unduly burdening the procedure, maximize the accuracy of the proceeding and respect the dignity and interests of the individuals involved.[11] For example, proof by clear and convincing evidence is required before a guardianship by a nonparent can be established.[12] Moreover, the law explicitly requires adequate notice of the guardianship hearing.[13] Following such notice, the parent has a right to an evidentiary hearing; that right, however, can be waived by failure to request the hearing or object to the contents of the section 1513 report.[14]

Absent adequate time to meaningfully review the report, however, an objecting parent may inadvertently waive his or her rights, or set a hearing where, on reflection, none is justified, and thereby unnecessarily delay a determination. The negative consequences of delay on the lives of the children, their parents and the prospective guardians, mandates the elimination of unnecessary barriers to timely adjudication.

Due process may not guarantee copies of relevant reports will be served *10 days or more* before the hearing on parents threatened with impairment of their parental rights in guardianship proceedings as a statute does in dependency cases. But this constitutional principle of fundamental fairness does guarantee receipt a sufficient time before the hearing to permit some minimally adequate level of preparation. "[T]ime not only to review and consider the contents of the report and the recommendations, but also to assemble their own evidence that contradicts or explains information contained in the report, to analyze the recommendations in light of such other information, . . . [and] also . . . to subpoena witnesses to be present at the hearing, to prepare for questioning and cross-examination of witnesses . . . ."[15] While the preceding passage is explaining why the Legislature concluded it needed to set a minimum time limit of 10 days in dependency cases, something approaching this level of preparation often will be required for parents defending against a guardianship petition that will take their children from them.

---

[10] *Guardianship of Stephen G., supra,* 40 Cal.App.4th at page 1427.

[11] (*Oberholzer v. Commission on Judicial Performance* 1999) 20 Cal.4th 371, 390 [84 Cal.Rptr.2d 466, 975 P.2d 663].

[12] *Guardianship of Stephen G., supra,* 40 Cal.App.4th 1418; *Guardianship of Jenna G.* (1998) 63 Cal.App.4th 387, 394 [74 Cal.Rptr.2d 47].

[13] *Guardianship of Debbie V.* (1986) 182 Cal.App.3d 781, 786–787 [227 Cal.Rptr. 554].

[14] *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 427 [188 Cal.Rptr. 781].

[15] *Judith P. v. Superior Court, supra,* 102 Cal.App.4th at page 548.

■ Furthermore, it is true 1513(d) does not require a report be "served" upon petitioner or other persons served in the proceeding. But it does mandate those reports be made available to such persons and that they receive them. Thus, at a minimum, petitioner and others in her category are entitled to timely receipt when they request a copy of the report.[16]

For the reasons set forth above, we are issuing a writ instructing the probate court to make provision for petitioner or her attorney to receive photocopies of any reports related to this petitioner's proceeding which she or her attorney requests—or to allow the petitioner or her attorney to make such photocopies—at a reasonable time before any hearing at which the report or reports may be considered.[17] Furthermore, the writ directs the probate court to revise its policies governing the handling of these reports in guardianship proceedings so, upon request, the court insures present and future "persons who have been served in [guardianship] proceedings or their attorneys" will receive copies of the reports designated in Probate Code section 1513 a reasonable time before any hearing in which the report will be relevant or, at a minimum, accord such persons a timely opportunity to photocopy those reports.

---

[16] This is not meant to limit the options available to the probate court in giving petitioner or similarly situated "persons served in the proceeding[]" timely possession of a copy of the requested reports. For security reasons, the Clerk's office may prefer to have its own personnel produce the photocopies. Or it may choose to set up a copying machine in a secure area and allow the requesting parties or their counsel to make the copies. Or the probate court may require the agency or person who produced the report to supply one or more copies as well as the original to the court or to respond directly to requests from the served parties for copies of the report. So long as the procedure the probate court adopts is consistent with the requesting party's receipt of a copy of the report sufficiently in advance of any hearing to permit proper preparation for that hearing, the court is free to adopt an approach different from those suggested above.

In any event, the probate court also is free to accompany the copy of the report supplied to the requesting person with a stern written warning or other communication to the effect the recipient is to maintain the confidentiality of the report and its contents, consistent with 1513(d). If the probate court elects to impose a charge for reproducing the reports, it would be a "public cost" and thus waived for recipients proceeding in forma pauperis. (See, e.g., *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235, 240 [70 Cal.Rptr. 226]; *Bank of America v. Superior Court* (1967) 255 Cal.App.2d 575, 577 [63 Cal.Rptr. 366]; *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770, 775 [53 Cal.Rptr. 424].) All of these opinions hold in forma pauperis status clearly justifies waiver of "public costs" and then extend in forma pauperis rights to embrace waiver of required undertakings such as appeal bonds and bonds ordinarily required from out-of-state plaintiffs.

[17] We recognize a requirement of service a specified number of days before a hearing is not essential to implement the procedural rights recognized here. Yet we also observe enactment of legislation similar to that in the dependency area would set clear guidelines beneficial to all participants in this process. Certainty in this area, because it would minimize delay and provide finality to the parties, is desirable. Consequently, we respectfully suggest the Legislature consider such legislation.

## DISPOSITION

Let a writ of mandate issue directing the respondent superior court (1) to make provision for timely delivery of copies of the subject reports to petitioner or petitioner's counsel—or provide an opportunity for them to make photocopies of such reports; (2) to revise its policy with respect to other present or future persons eligible to receive such reports under Probate Code section 1513(d) in order to make provision for timely delivery of photocopies of those reports, when requested, or the opportunity to make photocopies of same, consistent with this opinion. Petitioner is entitled to recover her costs in this writ proceeding.

Woods, J., and Zelon, J., concurred.