**GEORGE TANOA, HANS L. WEBSTER, TIAPULA IMO MAMEA, HELGA LEFITI TAFAFA SIATAGA, SAUMOLIA FUGA TALOSIA SOLIPO, ELIZABETH TUALA-TAMAALELAGAI, for themselves and as shareholders of ASDC similarly situated, Plaintiffs,**

**v.**

**TOM DRABBLE individually and as owner of Dateline Industries Inc., TOGIOLA TULAFONO individually and as Governor of American Samoa, BOARD OF DIRECTORS OF ASDC, and SESE MCMOORE individually and as Chairperson of the Board of Directors of ASDC and Director of ASDC, Defendants.**

High Court of American Samoa
Trial Division

CA No. 89-04

November 23, 2004

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs, Robert K. Maez
For Defendant Tom Drabble, Jennifer L. Joneson,
For Defendant Togiola Tulafono, Henry Kappel
For Defendants Board of Directors of ASDC and Sese McMoore, Fiti A. Sunia, Attorney General

### ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS AND DENYING SUMMARY JUDGMENT TO PLAINTIFFS

### Background

This dispute concerns a planned sublease and renovation of the land on which the Rainmaker Hotel is located. Defendant American Samoa Development Corporation ("ASDC") currently leases the hotel land from the American Samoa Government ("ASG"). ASDC agreed to sublease[1] a portion of the hotel land to Defendant Dateline Industries Inc. ("Dateline"), which planned on renovating that section of the premises. Plaintiff ASDC shareholders ("the shareholders") did not approve of the sublease and asked this Court to issue a preliminary injunction, barring the Defendants from finalizing and acting upon the sublease.

On October 7, 2004, the Court heard the preliminary injunction application. Towards the end of that hearing, Defendants orally moved to dismiss the action by summary

---

[1] Technically, the transaction involved an assignment, rather than a sublease, because the ASDC transferred its entire interest in the lease to Dateline. However, because both parties and the contract use the term "sublease," we will do so as well to avoid any unnecessary confusion.

judgment. The shareholders countered with their own oral motion for summary judgment.

On October 20, 2004, we issued an order denying in part and granting in part the shareholders' application for a preliminary injunction. We granted the shareholders' application to the extent that it relied on the absence of a shareholder vote approving the sublease. We held that the injunction would be automatically lifted when and if a meeting of the ASDC shareholders as a whole was convened and the sublease was approved by a majority of the ASDC shareholders. Additionally, we postponed disposition of the motions for summary judgment until Defendants offered written confirmation of that majority shareholder approval.

On November 5, 2004 the ASDC shareholders met and a majority of the shareholders approved the Dateline sublease. On November 9, 2004, the Attorney General, acting for the Defendants, submitted to the Court written confirmation of that shareholder approval. Therefore, it is now appropriate to rule on Defendants' motion for summary judgment.

## Discussion

Summary judgment is appropriate only when the pleadings and supporting papers show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56; *Etimani v. Samoa Packing Co.*, 19 A.S.R.2d 1, 4 (Trial Div. 1991). In ruling on a summary judgment motion, the court must view all pleadings and supporting papers in the light most favorable to the opposing party, treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to the opposing party. *Id.*

The shareholders provided three reasons why they believe that the Dateline sublease is invalid. First, they asserted that the sublease is invalid because the original lease was never approved by the Legislature of American Samoa ("the Legislature"), as is required by law. Second, they claimed that the sublease is invalid because the Legislature has likewise not formally approved it either. Third, they maintained that the sublease is invalid because it was never approved by a majority of ASDC shareholders.

## I. Approval of the Original Lease by the Legislature

Any lease having a term of 10 or more years and involving real property controlled by the American Samoa Government ("ASG"), in order to be effective, must be submitted to the Legislature, and not disapproved within 30 days of its submission. A.S.C.A. § 37.2030.

The shareholders asserted that the original lease did not pass the standard set forth in § 37.2030. However, as we found in the order on the application for preliminary injunction, the original hotel lease was submitted to the Legislature twice and that the Legislature never disapproved of the second submission, therefore validated the lease under § 37.2030. This material fact is not now in dispute.

The Legislature did, in fact, validate the original lease. Thus, the issue of legislative approval of this lease can be readily resolved by summary judgment. Defendants are entitled to summary judgment on this issue as a matter of law.

## II. Approval of the Sublease by the Legislature

The shareholders also contended that the sublease is invalid because it was never submitted to the Legislature, pursuant to § 37.2030. This material fact is also undisputed, and the legal related issue can be determined by summary judgment. This legal issue, however, is somewhat more complicated. No evidence on the record suggests that the sublease was ever submitted to the Legislature for disapproval. Therefore, the only real issue for us to decide is whether or not § 37.2030 applies to this sublease. If the statute does apply, then the sublease is ineffective until it is not disapproved by the Legislature within the 30 days in which action is required. If the statute is inapplicable, then, notwithstanding other possible flaws, the sublease is valid and binding.

We hold that the § 37.2030 does not apply to the Dateline sublease. The language of the statute does not include the term "sublease," and an examination into the purpose of the statute does not convince us to read that term into the statute. Moreover, applying the statute to subleases makes for poor policy because it would discourage investment on the island by putting an unnecessary burden upon legitimate business and commerce.

■ The text of the statute uses the term "lease," and does not use the terms "sublease" or "assignment." Section 37.2030 provides: "No lease of real property owned or controlled by the government which extends for a period of 10 years or longer may be effective until it has been submitted to the Fono, and not disapproved . . . within 30 days of its

submission." Therefore, if the statute is to apply to subleases or assignments, then we must either add the term into the statute, or interpret the word "lease" to include subleases and assignments. Because courts generally steer clear of adding language to a statute, *Tracy A. v. Superior Court*, 12 Cal. Rptr. 3d 684, 690 (Cal. Ct. App. 2004) (stating that courts generally avoid adding language to statutes when interpreting their meaning), we then must attempt to interpret the meaning of the term "lease." *See, e.g., New York Times Co. v. United States*, 403 U.S. 713, 740 (stating that it is the court's responsibility to interpret the laws). When a court undertakes the task of interpreting the language of a statute, it should adopt an interpretation that best advances the legislative purpose. *See, e.g., State v. Miniken*, 999 P.2d 1289, 1290 (Wash. Ct. App. 2000).

■ In the present controversy, the purpose of the statute is not fulfilled by applying it to subleases and assignments. Therefore, we hold that the term "lease," as used in § 37.2030, does not refer to subleases and assignments. Section 37.2030's objective is to provide a legislative check on executive authority to conduct significant lease transactions. Without that check, the Governor could bind the ASG to unprofitable and poorly negotiated lease contracts.

A sublease of ASG property presents an entirely different situation. In a transaction involving a sublease, typically, ASG is not even a party. The transaction is often between a private business that is leasing ASG land and another private business desiring to sublease a portion of that ASG land. The terms of the sublease do not affect the lessee's primary contract with ASG. The lessee is still obligated to abide by the terms of the primary contract, as originally approved by the Governor and Legislature. The length of the primary lease and the terms and amount of payment are unchanged. ASG continues to possess the same benefits and burdens under the primary lease as it did before the sublease.[2] Thus, because the sublease does not affect the terms under which the Governor has decided to part with ASG land, there is no need for legislative oversight and approval of the transaction.

Moreover, applying § 37.2030 to subleases of ASG land would unnecessarily inhibit economic growth in the territory. Business firms often concentrate their capital in projects where they can efficiently make money without unnecessary risk. ASG owns much of the prime

---

[2] In fact, if the lessee under the primary ASG lease decides to assign his or her lease to a third party, as is the case here, ASG then has the added benefit of having an additional party to pursue, should the original lessee fail to make payments under the terms of the primary lease.

commercial and industrial land on the island, including the Tafuna Industrial Park and much of the waterfront land around the harbor. Legitimate and profitable businesses interested in leasing buildings on those lands may be turned off from such investments if they have to be concerned about possible legislative disapproval in the event that they desire to sublease space on their property. Interested investors may steer their money elsewhere, in favor of locations where such a risk is not present.

We could envision how the negative economic consequences would be acceptable if ASG had a legitimate interest in controlling the terms of contracts between private parties to such subleases. However, as discussed above, the terms under which ASG originally leases out its land are unchanged by a sublease and therefore ASG has no legitimate interest in interfering with subsequent subleases.[3]

Therefore, in sum, we hold that § 37.2030 does not apply to subleases or assignments of ASG land. The Dateline sublease is valid, even though it was never presented to the Legislature for approval. Having resolved this legal issue in Defendants' favor, the shareholders' motion for summary judgment is properly denied, and Defendants are entitled to summary judgment on this issue as a matter of law.

## III. Shareholder Approval of the Sublease

■ The shareholders contended that the sublease is invalid because the ASDC board did not gain shareholder approval before completing the transaction. In our October 20, 2004 order on the preliminary injunction application, we determined that such shareholder approval was necessary and that the ASDC board had finalized the sublease without it. We then suggested that the ASDC board call a shareholder meeting with the purpose of putting the sublease to a shareholder vote and we agreed to postpone our decision on the motions for summary judgment until we gained word of the outcome of that vote.

On November 5, 2004, the ASDC shareholders met and a majority of those shareholders approved the Dateline sublease. On November 9, 2004, the Attorney General, acting for the Defendants, submitted to the Court written confirmation of that shareholder approval. The validity of the shareholder vote is not in dispute.

---

[3] ASG, of course, is free to negotiate a term into primary leases, limiting the lessee's ability to sublease or assign the property. However, in the case at hand, the primary lease specifically authorized the lessee to sublease or assign portions of the hotel. *See* "Lease Agreement Between the American Samoa Government and American Samoa Development Corporation," Clause 11.

Therefore, we hold that with regards to the shareholder approval issue, there is no genuine issue of material fact. Defendants are again entitled to summary judgment on this issue as a matter of law.

## Conclusion

We conclude that this case presents no remaining issues of material fact and therefore disposition by summary judgment is appropriate. The Legislature effectively approved the original hotel lease, and the Dateline sublease need not pass the mandates of A.S.C.A. § 37.2030. Additionally, the Dateline sublease was approved by the ASDC shareholders. Therefore, we order this action dismissed so that Dateline may begin its renovations and repairs to the Rainmaker Hotel.

## Order

1. The shareholders' oral motion for summary judgment is denied.

2. Defendants' oral motion for summary judgment is granted and this action is dismissed.

3. Defendants are entitled to have the Dateline sublease recorded by the Territorial Registrar. For this purpose, the Clerk of the Court shall have a certified copy of this summary judgment in Defendants' favor served on the Registrar.

It is so ordered.