[No. D048807. Fourth Dist., Div. One. Dec. 20, 2006.]

WAYNE F. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY, Real
Party in Interest.

**COUNSEL**

Michael D. McGlinn for Petitioners.

No appearance for Respondent.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Gary C. Seizer, Deputy County Counsel, for Real Party in Interest.

Steven J. Carroll, Public Defender, and Armando P. Salazar, Deputy Public Defender, for Minor.

OPINION

**BENKE, Acting P. J.**—In this writ proceeding we are called upon to interpret the recently enacted provisions of Welfare and Institutions Code section 366.26, subdivision (n)[1] (subdivision (n)). In general, section 366.26 provides for a hearing to determine whether parental rights over a child who has been adjudged a dependent should be terminated. Subdivision (n) provides that at or after a hearing is held under section 366.26, the juvenile court may, if specified conditions are met, designate the child's caretaker as a "prospective adoptive parent" (PAP). Among other facts, before designating the caretaker as a PAP the juvenile court must determine the child has lived with the caretaker for six months.

Subdivision (n) further provides that a PAP, or any caretaker who would qualify as a PAP, must be given notice and an opportunity to object to any decision by a social services agency to remove a child from the PAP's or caretaker's home. The PAP or caretaker may then object to removal of the child from his or her care. Upon receiving an objection from a PAP, the juvenile court must conduct a hearing and determine whether removal of the child from the PAP's home is in the best interest of the child.

■ In this case the parties' dispute is over subdivision (n)(3)(C), which states in pertinent part: "A determination by the court that the caretaker is a designated prospective adoptive parent . . . does not make the caretaker a party to the dependency proceeding nor does it confer on the caretaker any standing to object to any other action of the department or licensed adoption agency . . . ." As we explain in more detail below, this provision does not circumscribe the participation of PAP's in hearings under subdivision (n). Rather, the statute, as well as pertinent legislative history, make it clear PAP's have standing to fully participate in any removal hearing conducted under subdivision (n). Subject to the same discretion the juvenile court exercises over any litigant appearing before it, in a hearing under subdivision (n) PAP's, like other litigants, may offer evidence, examine witnesses, provide the court with legal authorities and make arguments to the court.

Here the juvenile court refused to permit two caretakers to fully participate in a removal hearing and the caretakers challenged the juvenile court's ruling by way of these proceedings. We grant their petition. In the event the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

caretakers are designated as PAP's they have the right to fully participate in any removal hearings conducted under subdivision (n).

## FACTUAL AND PROCEDURAL BACKGROUND

Antonio E. was born in May 2000, and has been in the care of petitioners Wayne F. and Lisa F. since he was three months old. Antonio is a special needs child and receives weekly therapy related to a diagnosis of attention deficit disorder and hyperactivity. Antonio is also in a special day-long kindergarten.

In 2002 the rights of Antonio's natural parents were terminated. Shortly thereafter Wayne and Lisa moved with Antonio from San Diego to Flagstaff, Arizona. They reside there now with Wayne and Lisa's naturally born son and two other adopted children. In 2004 Wayne and Lisa signed an inter-agency adoptive placement agreement with respect to Antonio and applied for an adoption home study. However, they have not yet completed the adoption process.

On May 3, 2006, shortly after Antonio's dependency file was reviewed by a newly assigned social worker, the San Diego County Health & Human Services Agency (agency) sent Wayne and Lisa notice the agency had determined Antonio's best interest required that he be removed from their home and that the agency would apply to the juvenile court for a removal order. The notice stated the agency had concerns because its review of the file showed Wayne and Lisa lacked parenting skills, had a history of referrals to child protective services (CPS) in both California and Arizona, had made derogatory remarks to an adoptions worker about Antonio's intellect, seemed to give their natural child preferential treatment, and seemed ambivalent about completing Antonio's adoption.

In a lengthy response to the notice, Wayne and Lisa challenged the factual assertions in the agency's notice. Wayne and Lisa pointed out none of the CPS referrals had resulted in any action against them and that since the time of the referrals they had been approved for adoption of two other children. They stated they had attended parenting classes and were willing to continue doing so. They also stated their natural son was born six weeks premature and suffered severe lung impairments; Wayne and Lisa asserted that in light of his physical condition, their natural son received special, rather than preferential, care. Finally, Wayne and Lisa asked that the juvenile court consider the views of Antonio's teacher, therapist and respite provider before making any change in his placement. In addition to opposing removal, Wayne and Lisa filed an application to be designated Antonio's de facto parents.

At a special hearing to determine Wayne and Lisa's procedural rights at the removal hearing, the juvenile court ruled that although their petition prompted the need for a hearing, they could not offer evidence at the hearing or argument. The court then set the hearing on Wayne and Lisa's objection to the agency's request for a removal order. Wayne and Lisa filed a petition for writ of mandate in which they argued that under subdivision (n) they have the right to fully participate in the removal hearing. We issued an order to show cause. While Wayne and Lisa's petition was pending the juvenile court issued an order preventing the agency from removing Antonio from Wayne and Lisa's home.

## DISCUSSION

### I

Initially, the agency argues that because Wayne and Lisa have not yet been designated as PAP's by the juvenile court, they lack standing to bring this petition. We disagree. Wayne and Lisa have an immediate interest in providing care for Antonio and in protecting their rights under subdivision (n). Hence they have standing to challenge the juvenile court's order. (See *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295–297 [50 Cal.Rptr.2d 493].)

We are also cognizant of the juvenile court's later order preventing removal of Antonio from Wayne and Lisa's care. However, because this issue may arise again in this case and because it is a matter of some importance to other PAP's, we will not treat it as moot. (See *Tracy A. v. Superior Court* (2005) 117 Cal.App.4th 1309, 1313–1314 [12 Cal.Rptr.3d 684].)

### II

Because we are asked to apply subdivision (n) to undisputed facts, we review the juvenile court's decision de novo. (See *State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1081 [62 Cal.Rptr.2d 178].)

Subdivision (n)[2] was added by the Legislature in 2005 by way of Senate Bill No. 218. (Sen. Bill No. 218 (2005–2006 Reg. Sess.) § 1 (Senate Bill

---

[2] Subdivision (n)(1) provides as follows: "Notwithstanding Section 8704 of the Family Code or any other provision of law, the court, at a hearing held pursuant to this section or anytime thereafter, may designate a current caretaker as a prospective adoptive parent if the child has lived with the caretaker for at least six months, the caretaker currently expresses a commitment to adopt the child, and the caretaker has taken at least one step to facilitate the adoption process. In determining whether to make that designation, the court may take into consideration whether the caretaker is listed in the preliminary assessment prepared by the county

No. 218).) According to the Senate Committee on Judiciary "[Sen. Bill No. 218] would confer on a caretaker who is a designated prospective adoptive parent standing to petition the court for a hearing on whether it is in

department in accordance with subdivision (i) of Section 366.21 as an appropriate person to be considered as an adoptive parent for the child and the recommendation of the State Department of Social Services or licensed adoption agency.

"(2) For purposes of this subdivision, steps to facilitate the adoption process include, but are not limited to, the following:

"(A) Applying for an adoption homestudy.

"(B) Cooperating with an adoption homestudy.

"(C) Being designated by the court or the licensed adoption agency as the adoptive family.

"(D) Requesting de facto parent status.

"(E) Signing an adoptive placement agreement.

"(F) Engaging in discussions regarding a postadoption contact agreement.

"(G) Working to overcome any impediments that have been identified by the State Department of Social Services and the licensed adoption agency.

"(H) Attending classes required of prospective adoptive parents.

"(3) Prior to a change in placement and as soon as possible after a decision is made to remove a child from the home of a designated prospective adoptive parent, the agency shall notify the court, the designated prospective adoptive parent or the current caretaker, if that caretaker would have met the threshold criteria to be designated as a prospective adoptive parent pursuant to paragraph (1) on the date of service of this notice, the child's attorney, and the child, if the child is 10 years of age or older, of the proposal in the manner described in Section 16010.6.

"(A) Within five court days or seven calendar days, whichever is longer, of the date of notification, the child, the child's attorney, or the designated prospective adoptive parent may file a petition with the court objecting to the proposal to remove the child, or the court, upon its own motion, may set a hearing regarding the proposal. The court may, for good cause, extend the filing period. A caretaker who would have met the threshold criteria to be designated as a prospective adoptive parent pursuant to paragraph (1) on the date of service of the notice of proposed removal of the child may file, together with the petition under this subparagraph, a petition for an order designating the caretaker as a prospective adoptive parent for purposes of this subdivision.

"(B) A hearing ordered pursuant to this paragraph shall be held as soon as possible and not later than five court days after the petition is filed with the court or the court sets a hearing upon its own motion, unless the court for good cause is unable to set the matter for hearing five court days after the petition is filed, in which case the court shall set the matter for hearing as soon as possible. At the hearing, the court shall determine whether the caretaker has met the threshold criteria to be designated as a prospective adoptive parent pursuant to paragraph (1), and whether the proposed removal of the child from the home of the designated prospective adoptive parent is in the child's best interest, and the child may not be removed from the home of the designated prospective adoptive parent unless the court finds that removal is in the child's best interest. If the court determines that the caretaker did not meet the threshold criteria to be designated as a prospective adoptive parent on the date of service of the notice of proposed removal of the child, the petition objecting to the proposed removal filed by the caretaker shall be dismissed. If the caretaker was designated as a prospective adoptive parent prior to this hearing, the court shall inquire into any progress made by the caretaker towards the adoption of the child since the caretaker was designated as a prospective adoptive parent.

"(C) A determination by the court that the caretaker is a designated prospective adoptive parent pursuant to paragraph (1) or subparagraph (B) does not make the caretaker a party to the

the best interest of a child to remove that child from the caretaker's home after termination of parental rights and before a petition for adoption is granted. [¶] . . . [¶]

"The author and the sponsor of the bill . . . believe that existing law does not protect the stability of children post-termination of parental rights, because the court's oversight function essentially evaporates between the order to place the child for adoption and the order granting the petition for adoption. Current law gives the DSS and the licensed adoption agency unfettered authority during this time period to remove a child from a caretaker's home, they state, without the safeguard of the court reviewing the decision. This is contrary to 'the collaborative decision-making process that occurs earlier in dependency proceedings,' they assert, where the best interest of the child is protected at all times.

"The sponsor contends that children who have lived for long periods of time with their caretakers could be psychologically harmed by being moved to a different home pending a petition for adoption. Their proposed solution is to require that when the DSS or the licensed adoption agency recommends that a child be removed from a caretaker who wishes to adopt the child, only to be adopted by a different person, that recommendation should be reviewed

---

dependency proceeding nor does it confer on the caretaker any standing to object to any other action of the department or licensed adoption agency, unless the caretaker has been declared a de facto parent by the court prior to the notice of removal served pursuant to paragraph (3).

"(D) If a petition objecting to the proposal to remove the child is not filed, and the court, upon its own motion, does not set a hearing, the child may be removed from the home of the designated prospective adoptive parent without a hearing.

"(4) Notwithstanding paragraph (3), if the State Department of Social Services or a licensed adoption agency determines that the child must be removed from the home of the caretaker who is or may be a designated prospective adoptive parent immediately, due to a risk of physical or emotional harm, the agency may remove the child from that home and is not required to provide notice prior to the removal. However, as soon as possible and not longer than two court days after the removal, the agency shall notify the court, the caretaker who is or may be a designated prospective adoptive parent, the child's attorney, and the child, if the child is 10 years of age or older, of the removal. Within five court days or seven calendar days, whichever is longer, of the date of notification of the removal, the child, the child's attorney, or the caretaker who is or may be a designated prospective adoptive parent may petition for, or the court on its own motion may set, a noticed hearing pursuant to paragraph (3). The court may, for good cause, extend the filing period.

"(5) Except as provided in subdivision (b) of Section 366.28, an order by the court issued after a hearing pursuant to this subdivision shall not be appealable.

"(6) Nothing in this section shall preclude a county child protective services agency from fully investigating and responding to alleged abuse or neglect of a child pursuant to Section 11165.5 of the Penal Code.

"(7) The Judicial Council shall prepare forms to facilitate the filing of the petitions described in this subdivision, which shall become effective on January 1, 2006."

by the dependency court." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 218 (2005–2006 Reg. Sess.) as amended Apr. 7, 2005, pp. 4–5.)[3]

In addition to the foregoing, the legislative history also makes reference to *In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397 [114 Cal.Rptr.2d 46], in which the court held a juvenile court had to give considerable deference to a social service agency's determination an 18-month-old child should be adopted by paternal relatives who lived in Puerto Rico rather than the foster parents who cared for the child since shortly after his birth. The court stated: "[A]bsent an abuse of discretion, the Legislature has given power to the Department, not the court, to decide where a child should be placed after parental rights are terminated and pending adoption. [Citation.] ['Absent a showing that DSS's placement decision is patently absurd or unquestionably not in the minor's best interests, the court may not interfere and disapprove of the minor's placement.']; [Citation.]" (*Id.* at p. 1397.)

Under the terms of subdivision (n), at or after a hearing under section 366.26, the juvenile court may designate a dependent child's caretaker as a PAP if the child has lived with the caretaker for six months, the caretaker has expressed a commitment to adopt the child and the caretaker has taken at least one step to facilitate the adoption process. (Subd. (n)(1).) If the agency wishes to remove a child from a PAP's home or the home of someone who would qualify as a PAP, the agency must give the PAP or otherwise qualified caretaker notice of its intention to do so. (Subd. (n)(3).)[4] Within five business days or seven calendar days, whichever is longer, the PAP or qualified caretaker may file a petition with the juvenile court objecting to removal of the child from his or her care. (Subd. (n)(3)(A).) If the petition is filed by a caretaker who has not yet been designated as a PAP, the caretaker may at the same time file a petition for an order giving the caretaker that designation. (*Ibid.*)

When a petition objecting to removal is filed, the juvenile court must conduct a hearing on the petition, and any related petition for designation as a PAP, within five court days. (Subd. (n)(3)(B).) "At the hearing, the court shall determine whether the caretaker has met the threshold criteria to be designated as a prospective adoptive parent pursuant to paragraph (1), and whether

---

[3] We have taken judicial notice of the Senate and Assembly Committees on Judiciary's analyses of Senate Bill No. 218. (See *In re J. W.* (2002) 29 Cal.4th 200, 211 [126 Cal.Rptr.2d 897, 57 P.3d 363] ["To determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice"].)

[4] No prior notice is required if the social service or adoption agency "determines that the child must be removed from the home of the caretaker who is or may be a designated prospective adoptive parent immediately, due to a risk of physical or emotional harm." (Subd. (n)(4).) In such an instance a caretaker may still object to removal and, if an objection is interposed, the juvenile court must conduct a hearing under the provisions of subdivision (n)(3). (Subd. (n)(4).)

the proposed removal of the child from the home of the designated prospective adoptive parent is in the child's best interest, *and the child may not be removed from the home of the designated prospective parent unless the court finds that removal is in the child's best interest.*" (*Ibid.*, italics added.)

■ Subdivision (n)(3)(C), which is the subject of this proceeding, limits the role of a PAP in dependency proceedings: "A determination by the court that the caretaker is a designated prospective parent pursuant to paragraph (1) or subparagraph (B) does not make the caretaker a party to the dependency proceeding nor does it confer on the caretaker *any standing to object to any other action* of the department or licensed adoption agency, unless the caretaker has been declared a de facto parent by the court prior to the notice of removal pursuant to paragraph (3)." (Italics added.) The agency contends that in light of subdivision (n)(3)(C), PAP's may file a petition objecting to removal but may not otherwise participate in a removal hearing unless they were previously given de facto parent status. Wayne and Lisa argue that subdivision (n)(3)(C) gives them standing to fully participate in the removal hearing and only prevents them from participating in any other aspect of a dependency proceeding.

## III

■ " ' "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved under the legislative history.' [Citation.]" (*In re Marriage of Armato* (2001) 88 Cal.App.4th 1030, 1035 [106 Cal.Rptr.2d 395].)

Here the plain meaning rule is not entirely decisive. The phrase which deprives PAP's of "standing to object to any other action" could be read, as the agency reads it, as giving PAP's the narrow right to file a petition objecting to removal but no right to offer evidence or argument in favor of their objection. On the other hand it could be read, as Wayne and Lisa contend, as depriving PAP's of standing to participate in any proceeding other than a removal hearing under subdivision (n) but preserving for them the right to fully participate in such a removal hearing.

However, when we consider Senate Bill No. 218's legislative history, other portions of subdivision (n) and the practical implications of preventing PAP's

from presenting evidence and argument at a removal hearing, we must conclude the Legislature intended that PAP's fully participate in removal hearings. The history of Senate Bill No. 218 makes it abundantly clear that in enacting subdivision (n) the Legislature intended that following termination of parental rights the juvenile court, rather than any social services or adoption agency, will determine whether a child should be removed from a home in which the child had been for at least six months and that removal may be ordered only if it is in the best interest of the child. The Senate Committee on Judiciary report states in pertinent part: "This bill *is intended to prevent the removal of a dependent child from his or her caretaker's home after parental rights are terminated*, if the caretaker is a designated prospective adoptive parent, as defined. [¶] . . . [¶]

"This bill would provide that the child, child's attorney, or the designated prospective adoptive parent may petition the court for a hearing, or the court on its own motion may set a hearing, on the proposed removal of the child. At the hearing, the court would determine whether it would be in the best interest of the child to remove that child from the caretaker's home." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 218 (Reg. Sess. 2005–2006) as amended Apr. 7, 2005, pp. 2–3, italics added.) These statements are unmistakable evidence the Legislature intended to give the juvenile court the wide discretion cases such as *Harry N.* had previously afforded social service and adoption agencies. Importantly, this intention is expressed in equally clear terms in the text of the statute, which provides in pertinent part: "the child may not be removed from the home of the designated prospective adoptive parent *unless the court finds that removal is in the child's best interest*." (Subd. (n)(3)(B), italics added.)

The evident intention of the Legislature to give the juvenile court power over removal of a child from the home of a PAP is entirely inconsistent with the restrictions the agency would place on the participation of PAP's in removal proceedings. If, at a removal hearing, the juvenile court were permitted only to hear evidence and argument from a social service or adoption agency, as a practical matter the juvenile court would be required to defer to the determination of the only active litigant in the courtroom. Such a one-sided process would not permit the juvenile court to exercise the independent judgment the Legislature plainly intended.

The record here is illustrative of the direct connection between the active participation of PAP's at the removal hearing and the role of the juvenile court in determining the best interest of the child. As we have indicated, the agency's notice describes Wayne and Lisa as lacking both parenting skills and any genuine interest in adopting Antonio; Wayne and Lisa's petition vigorously disputes this characterization and argues the agency and its

counterpart in Arizona have failed to provide Antonio with the support he needs. Any determination of Antonio's best interest would require the juvenile court come to some resolution as to these disputed facts. Such a resolution would be severely hampered if only the agency's version of events were available to the court.

■ We recognize that at the removal hearing the child's interest will be represented by his own counsel and under section 317 counsel is obligated to serve the child's best interest. However counsel's view of the child's interest and a PAP's view of that interest may be sharply different and a child's counsel may not believe it is in the child's interest to vigorously contest the agency's plan to remove the child from the PAP's home. If that is the case there is again a substantial risk the juvenile court's prescribed role in a removal hearing will be undermined. In short, full participation of PAP's at removal hearings is the most effective means of meeting the Legislature's expressed direction that the juvenile court, rather than a social service or adoption agency, determine whether removal is in a child's best interest.

We also recognize, as the agency points out, that permitting PAP's to fully participate in the removal hearing will add time and expense to those proceedings. Once again, however, the legislative history is helpful. The Assembly Committee on Judiciary analysis states: "This standing to petition the court directly to object to a proposed removal would be a major victory for caretakers who have committed to adopting a child and who have felt their world turned upside down when the child they have taken care of for an extended period is suddenly removed from their care. In an effort to limit workload and permitted challenges, *this bill confers this standing to object to removal of a child in a very limited class of caretakers*." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 218 (2005–2006 Reg. Sess.) as amended June 2, 2005, p. 6, italics added.) Indeed, the Senate Committee on Appropriations analysis found: "There are about 6,700 children available for adoption each year. Relatively few cases would be impacted by the provisions of this bill. Increased costs to DSS are probably not substantial. . . .

"Increased costs to Judicial Council for developing new forms and to the courts for any additional hearings are probably not substantial. Such hearings would likely be held within a matter of days or weeks, and thus probably would not result in significant delays." (Sen. Com. on Appropriations, Analysis of Sen. Bill No. 218 (2005–2006 Reg. Sess.) as amended Apr. 21, 2005, p. 2.) In short, given the limited number of children who are likely to be the subject of subdivision (n) removal proceedings, any increase in cost and delay caused by permitting PAP's to fully participate is warranted by the substantial interests at stake in such cases.

Let a writ issue to the juvenile court directing that, subject to the same discretion the juvenile court exercises over any litigant appearing before it, in any hearing under subdivision (n) designated PAP's, like other litigants, may offer evidence, examine witnesses, provide the court with legal authorities and make arguments to the court.

Haller, J., and McIntyre, J., concurred.