Filed 4/12/13  In re B.D. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E056197 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ003820) |
| v. | OPINION |
| R.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court terminated the parental rights of defendant and appellant R.D. (Father) regarding his son, B.D., pursuant to Welfare and Institutions Code[1] section 366.26. On appeal, Father contends: (1) the trial court abdicated its authority under section 366.26, subdivision (n), when it failed to make a decision on B.D's removal from the paternal grandparents' home; (2) the relative placement preference in section 361.3 was violated; and (3) the trial court erred in failing to apply the sibling relationship exception. We reject these contentions and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On November 19, 2009, the Department of Public Social Services (the Department) filed a dependency petition on behalf of B.D., and his older half sibling, J.B.,[2] pursuant to section 300, subdivisions (b), (g), and (j), alleging their mother's unresolved mental health and substance abuse issues, inappropriate discipline of J.B., and prior child welfare history placed them at risk of harm, and their respective fathers failed to protect and provide for them. The petition was later amended twice to include an allegation that Father also had an unresolved substance abuse problem.

At the detention hearing on November 20, 2009, Father was found to be B.D.'s presumed father. The court ordered the child detained in protective custody and authorized supervised visitation twice a week.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] J.B. is not a party to this appeal and thus will be discussed only if necessary.

2

According to the addendum report filed on February 5, 2010, and prepared for the contested jurisdiction/disposition hearing, the Department recommended that B.D. be declared a dependent of the court pursuant to section 300, subdivisions (b), (g), and (j), and that Father be offered six months of reunification services and supervised visitation. At the contested jurisdiction/disposition hearing on February 10, 2010, the trial court found the allegations of the second amended petition to be true, declared B.D. to be a dependent of the court, removed him from parental custody, and ordered family reunification services.

According to the six-month review report filed on August 2, 2010, Father and his wife had another juvenile case pending regarding their two children. Father's wife had an "extensive criminal history in addition to a prior CPS case where an infant died in her care." Father worked part time at a family restaurant, struggled with diabetes, took insulin daily, and had a violent criminal history that included spousal abuse. B.D. was placed in the home of his paternal[3] grandparents (also referred to herein as "grandparents," "paternal grandmother," or "grandmother") on April 14, 2010, where his four-year-old sibling resides under a plan of legal guardianship. The paternal grandparents were willing to adopt B.D. if the parents failed to reunify with him. The Department recommended termination of reunification services, reduction in supervised

---

[3] Although the six-month review report states that B.D. was placed with the "maternal" grandparents, all other references are to the paternal grandparents. Accordingly, we assume that the references to maternal grandparents on pages 310 and 311 were typographical errors.

visitation, and that the court set a section 366.26 hearing. A contested six-month review hearing was set for September 20, 2010.

At the contested six-month review hearing, Father's attorney represented that Father had completed the components of his case plan, as he had another case pending involving his older children. Father was willing to waive further services so that B.D. could remain with the paternal grandparents. The court accepted Father's waiver, terminated reunification services, and set the permanency planning hearing.

The section 366.26 report filed on December 30, 2010, requested 30 days to complete the preliminary adoption assessment of the paternal grandparents. The Department noted that B.D. was often surrounded by paternal family members and he "appear[ed] to enjoy his family a great deal." According to the "Delivered Service Log" the paternal grandmother's home was "very clean" and had "plenty of food and baby supplies." B.D. was dressed in clean clothing and no suspicious marks or bruises were observed. He appeared to get along well with family members and seemed happy and secure. The permanency planning hearing was continued to May 18, 2011, to allow the Department time to complete the preliminary adoption assessment of the paternal grandparents.

In the addendum report filed on May 12, 2011, the Department noted that on March 3 the paternal grandparents completed a safety plan stating that no adults with a criminal history could reside in the home without being permitted by the Department. The safety plan was necessary because the grandmother had disclosed that her son, E.D., who had a criminal history, stayed in her home on a temporary basis. On March 21, the

4

grandmother informed the Department that four other grandchildren had been placed in her home. The social worker expressed concern as to grandmother's ability to handle all six children; however, the paternal grandmother insisted the grandchildren needed her. By April 7, the grandmother informed the Department that Los Angeles County wanted to give her custody of the four other grandchildren.

On April 11, 2011, the Department removed B.D. from the grandmother's home. The Department's concern involved grandmother's 16-year-old granddaughter who was helping grandmother with the children by driving them around. B.D. cried and called grandmother "Mommy." B.D. was placed in the home of a paternal uncle and aunt, I. and V.D.

On May 18, 2011, Father requested and the court ordered the Department to reassess the paternal grandparents' home for placement. The permanency planning hearing was continued to September 15, 2011.

Another addendum report, filed on September 12, 2011, indicated the paternal uncle had passed away on July 9, 2011, and his widow had requested that the child be removed from her home. The paternal grandparents' home was re-evaluated on July 18, and live scans of all adults in the home were clear. The Department expected to have the assessment completed by the scheduled hearing date. However, on August 1, B.D. was placed in a nonrelative foster home. The September 15 hearing was continued to December 7 as a contested hearing.

The section 366.26 contested hearing report was filed on November 21, 2011. The Department expressed concern regarding the paternal grandparents' "ability to establish

5

boundaries with their adult children who have known criminal histories and significant history with child welfare agencies." Their home was described as a "haven for all of their adult children and their grandchildren when they need a place to stay." The Department opined that placement of B.D. in their home "does not appear to be in the child's best interest." B.D. was currently living with foster parents, who had "expressed their interest in adoption and are committed to continued visitation with the child's extended family members, if contact with these family members [is] appropriate." The Department had denied the return of B.D. to paternal grandparents' home, citing previous child welfare allegations against them from January 2004 to January 2010, along with two prior filings for an injunction prohibiting harassment against the grandmother. One was filed by B.D.'s mother and the other by Father's wife. Meanwhile, both the paternal grandparents and Father continued to visit the child.

On December 7, 2011, the section 366.26 hearing was continued to April 5, 2012, to allow the Department more time to complete the adoption assessment as to the current caregivers. The Department recommended adoption by the current caregivers, who were willing to adopt B.D. On January 18, 2012, the trial court ordered that visitation between the paternal grandparents and B.D. be supervised twice a month for one hour.

On January 23, 2012, the paternal grandparents filed a motion for de facto parent status. Three days later, they filed a caregiver information form in which they expressed their desire to have B.D. returned to them and see him reunited with his brother, whom they care for. On March 12, the paternal grandmother filed a declaration requesting another opportunity to be given placement of B.D. She recognized her failure to report

6

changes to her household to the Department but opined that her "language can be a barrier with communicating information due to not always having access to someone that can communicate in Spanish." She further expressed how B.D.'s absence had affected her, her husband, and B.D.'s brother. On April 5, 2012, the trial court denied the motion for de facto parent status. The court terminated parental rights and selected adoption as being in the best interests of the child. Father appeals.

## II.  COMPLIANCE WITH SECTION 366.26, SUBDIVISION (N)

Father contends the Department failed to comply with section 366.26, subdivision (n), when it removed B.D. from the paternal grandparents' home, and such failure resulted in a miscarriage of justice. Arguing that the grandparents met the criteria to be considered designated prospective adoptive parents (PAP) and the Department failed to give statutory notice of B.D.'s removal, Father claims the trial court abdicated its authority under section 366.26, subdivision (n) when it failed to make a decision on B.D's removal.

Section 366.26, subdivision (n), in relevant part, provides:  "Notwithstanding Section 8704 of the Family Code [that is, notwithstanding the adoption agency's exclusive custody or control of a child after the termination of parental rights] or any other provision of law, the court, at a [Welfare and Institutions Code section 366.26] hearing . . . or anytime thereafter, may designate a current caretaker as a prospective adoptive parent if the child has lived with the caretaker for at least six months, the caretaker currently expresses a commitment to adopt the child, and the caretaker has

taken at least one step to facilitate the adoption process. . . ." (Section 366.26, subd. (n)(1).)

"Subdivision (n) further provides that a PAP, or any caretaker who would qualify as a PAP, must be given notice and an opportunity to object to any decision by a social services agency to remove a child from the PAP's or caretaker's home. The PAP or caretaker may then object to removal of the child from his or her care. Upon receiving an objection from a PAP, the juvenile court must conduct a hearing and determine whether removal of the child from the PAP's home is in the best interest of the child." (*Wayne F. v. Superior Court* (2006) 145 Cal.App.4th 1331, 1334.)

To begin with, we note the language of section 366.26, subdivision (n), limits its application to the court's actions by stating, "at a [Welfare and Institutions Code section 366.26] hearing . . . or anytime thereafter . . . ." (§ 366.26, subd. (n)(1).) The section 366.26 hearing was held on April 5, 2012. The child was removed from the paternal grandparents' care the prior year, April 11, 2011. Accordingly, section 366.26, subdivision (n), concerns the "standards to be applied to agency decisions in the narrow category of *posttermination* removal of children from designated prospective adoptive placements and gives to the court the wide discretion previously afforded the adoption agencies to determine whether the placement is in the best interest of the child. [Citation.]" (*State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 286; italics added.)

Notwithstanding the above, even if we assume that section 366.26, subdivision (n) was applicable, the Department argues that failure to object to a lack of notice means

8

both Father and the paternal grandparents have forfeited the issue on appeal.  We agree.

"A defect in notice . . . is a most serious issue, potentially jeopardizing the integrity of the entire judicial process.  However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal.  This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court.  [Citation.]  For example, in *In re B. G.*[ (1974) 11 Cal.3d 679, 689], the Supreme Court held that a mother had received inadequate notice of a jurisdictional hearing, but concluded she had forfeited her right to raise that issue on appeal when she appeared at subsequent hearings with her counsel in the juvenile court yet failed to challenge the validity of the jurisdictional order.  [Citations.]" (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.)

Despite the error in failing to provide notice and an opportunity to be heard on the issue of B.D.'s removal from the paternal grandparents' home, there were several hearings held after the child was removed, but neither Father nor the grandparents objected to a lack of notice and opportunity to be heard pursuant to section 366.26, subdivision (n).  Thus, the juvenile court was deprived of the opportunity to correct the error.  Accordingly, the issue has been waived.

Moreover, the record before this court shows there was good cause for removal of B.D. from the paternal grandparents' home.  The grandparents allowed an uncle who had a CPS and criminal history involving domestic violence to live in their home; four additional grandchildren were placed in the grandparents' home; the grandmother was

9

having her 16-year-old granddaughter, who had not been live scanned, help out with the children; and grandmother allowed another granddaughter to assist in providing transportation for the children even though she did not have a driver's license or car insurance. Thus, by March 31, 2011, when the grandparents' home was not recertified, B.D. could not remain there. On October 18, 2011, the home was conditionally certified for placement by the Relative Assessment Unit. Placement was conditioned on no other adults living in the home; B.D. would be transported only by a person with a valid driver's license, vehicle registration and insurance; and another child, A., could not have unsupervised visits with B.D. and he could not stay in the home. On November 16, 2011, it was determined that placing B.D. with the paternal grandparents was not in his best interests, based on the child welfare history of the grandmother and other concerns. By this time, B.D. had been placed in a nonrelative foster home since August 1, 2011. The Department would not approve placement or adoption by the paternal grandmother.

For the above reasons, we reject Father's claim that the juvenile court "abdicated" its authority under section 366.26, subdivision (n), when it failed to make a decision on B.D's removal.

### III. RELATIVE PLACEMENT

Father faults the juvenile court for "refusing to decide on [his] repeated requests for reassessment of the paternal grandparents' home for [B.D.'s] placement." He contends the "court's refusal to make a decision resulted in violation of section 361.3 and denial of preferential relative placement consideration of the grandparents, whose home was approved for [B.D.'s] placement" and resulted in a miscarriage of justice. Father

10

further asserts he has standing to raise this issue. In response, the Department argues Father lacks standing to assert relative placement issues in this appeal from the section 366.26 hearing; that section 361.3 was followed; and there is no basis to reverse the order terminating Father's parental rights.

Our Supreme Court has considered whether a father had standing to appeal a juvenile court's order declining to place a child with the child's grandparents. (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).) In *K.C.*, the court reviewed appellate decisions and derived the following rule: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*Id*. at p. 238.)

In Father's opening brief, he asserts the trial court and Department erred by not following the proper relative assessment/placement procedures (§ 361.3). He claims the Department failed to afford the paternal grandparents preferential placement consideration when it placed B.D. in a nonrelative foster home on August 1, 2011, and the Department misled the court, Father, and the grandparents to believe that B.D. would be replaced into paternal grandparents' home, when it was really looking for more information to deny their placement request. In a single paragraph, Father claims "the resolution of the placement issue has the potential to alter the decision to terminate parental rights under both sibling and relative-guardian exceptions to adoption, given [B.D.'s brother, R.] lived with the grandparents under the plan of legal guardianship." At oral argument, counsel for Father asserted that the error in not placing B.D. with the

11

grandparents impacted the decision to terminate his parental rights. Thus, Father maintains that he has standing to raise the relative placement issue.

Assuming Father has standing, we will address the merits of his contention. Section 361.3 provides that in any case where a child is removed from the physical custody of his or her parents, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ." (§ 361.3, subd. (a).) "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) The statute lists a number of factors to be used by the county social worker (i.e., the Department) in determining whether a placement is appropriate, although consideration is not limited to the specified factors. (§ 361.3, subd. (a)(1)-(a)(8).) Among these are the following: "The best interest of the child, including special physical, psychological, educational, medical, or emotional needs" (§ 361.3, subd. (a)(1)); the placement of siblings together (§ 361.3, subd. (a)(4); the character of adults in the relative's home (§ 361.3, subd. (a)(5)); the nature and duration of the relationship between the relative and the child (§ 361.3, subd. (a)(6)); the ability of the relative to provide a safe, secure, and stable environment for the child (§ 361.3, subd. (a)(7)(A)); and the safety of the relative's home (§ 361.3, subd. (a)(8)).

Cases interpreting the statute have stressed that it does not create an evidentiary presumption. Instead, "'relatives [are to] be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child.' [Citations.]" (*In re Antonio G.* (2007) 159 Cal.App.4th 369, 377.)

12

The preference applies "when a new placement becomes necessary after reunification services are terminated but before parental rights are terminated and adoptive placement becomes an issue." (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032.)

Here, the record demonstrates that the paternal grandparents' home had been repeatedly assessed and carefully considered by the Department and the juvenile court as required by section 361.3. In fact, the Department's initial plan had been to place the child with the paternal grandparents, pending the results of its assessment. Unfortunately, the grandparents allowed family members with criminal backgrounds and histories with CPS to stay in their home; they allowed the child to be driven by an unlicensed driver, they took in four additional grandchildren, and they allowed their home to be a "safe haven" for their adult children and grandchildren whenever they needed a place to stay. Further, the Department learned the grandmother also had a history with CPS. Thus, the Department did not find that placing B.D. with his paternal grandparents would be in his best interests and the court agreed. (See discussion in section IV.) Regarding the relative-guardian exception, the Department argues that this exception was never raised at the trial level, and it is inapplicable because the grandparents were willing to adopt B.D.

For the above reasons, we reject Father's challenge to the court's refusal to place B.D. with the grandparents.

## IV. SIBLING RELATIONSHIP EXCEPTION

Father contends the sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) to the termination of parental rights applies. He argues that B.D. had a "highly significant

13

attachment to [his brother, R.] and ongoing contact between them was in his best interests."

The sibling relationship exception applies if the court finds a compelling reason for determining that termination would be detrimental to the child due to "substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

"Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.' [Citations.] Indeed, even if adoption would interfere with a strong sibling relationship, the court must nevertheless weigh the benefit to the child of continuing the sibling relationship against the benefit the child would receive by gaining a permanent home through adoption. [Citation.]" (*In re Celine R.*, *supra*, 31 Cal.4th at p. 61.) Father has the burden of establishing the applicability of the exception. (See *In re Megan S.* (2002) 104 Cal.App.4th 247, 252.)

14

In reviewing challenges to a trial court's decision as to the applicability of these exceptions, we will employ the substantial evidence or abuse of discretion standards of review depending on the nature of the challenge. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315-1316.) We will apply the substantial evidence standard of review to evaluate the evidentiary showing with respect to factual issues, such as whether the parent has maintained regular visits with the child (for the beneficial parental relationship exception) or whether the child has a close and strong bond with a sibling (for the sibling relationship exception). (*Id*. at p. 1315; § 366.26, subd. (c)(1)(B)(i), (v).) However, a challenge to the trial court's determination of questions such as whether, given the existence of beneficial parental relationship or a sibling relationship, there is a compelling reason for determining that termination of parental rights would be detrimental to the child "'is a quintessentially discretionary determination.'" (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.) We review such decisions for abuse of discretion. (*Ibid*.) In the dependency context, both standards call for a high degree of appellate court deference. (*Ibid*.; see also *In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)

Turning to the record before this court, we conclude that the evidence does not support application of the sibling relationship exception. B.D.'s brother, R., did reside with the paternal grandparents who had been granted legal guardianship of him on December 1, 2009. B.D. was placed with the same grandparents on April 14, 2010, when he was one year old and R. was five years old. In January 2011, it was reported that B.D. and R. enjoyed playing together and had a close bond. However, by April 2011, B.D.

15

was removed from the grandparents' home and has not returned. Termination of parental rights does not mean that B.D. will never see R. again. Rather, the prospective adoptive parents were committed to continued visitation with extended family members if contact with these members was appropriate. In addition, the foster parents were willing to maintain informal contact between R. and B.D. through letters, telephone calls, or visits.

Regarding B.D.'s best interests, the recent record shows he has been flourishing in the care of the foster parents, who want to adopt him. He no longer has temper tantrums and presents himself as a happy child. He has adjusted well to the foster parents' home and appears anxious when separated from them. B.D. has bonded with the foster parents and has been thriving in their care; he refers to the foster family as his parents and sisters.

Given the above, there is no evidence that interference with B.D.'s sibling relationship with R. would outweigh the benefits of adoption or otherwise be detrimental to B.D. We therefore conclude the sibling relationship exception does not apply.

## V. DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


<u>      HOLLENHORST      </u>
Acting P. J.

We concur:

<u>      MCKINSTER      </u>
J.

<u>      KING      </u>
J.

16